IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DEBORAH T.[1], § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 4:18-cv-00765-O-BP |
| § | | |
| ANDREW M. SAUL, Commissioner of § | | |
| Social Security[2], § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff filed this action under 42 U.S.C. §§ 405(g) seeking judicial review of the unfavorable decision of the Commissioner of the Social Security Administration ("Commissioner") regarding her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF No. 1 at 1; Tr. 14). After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.    STATEMENT OF THE CASE**

Plaintiff applied for DIB on July 14, 2015, alleging disability based on asthma, obesity, lumbar spondylolisthesis, hypertension, and obstructive sleep apnea. (Tr. 17). The Commissioner initially denied her DIB application on September 29, 2015 and again upon reconsideration on

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). Title II governs disability insurance benefits. *See* 42 U.S.C. §§ 401-34.

January 13, 2016. (Tr. 14). Plaintiff timely filed a request for a hearing. (*Id.* at 26). She attended and testified at the hearing before Administrative Law Judge ("ALJ") Brock Cima on January 3, 2017 in Fort Worth, Texas. (*Id.* at 14). Also present were Plaintiff's non-attorney representative, Andrew S. Youngman; her attorney, Candra Stewart; and a vocational expert ("VE"), Michelle M. Aliff. (*Id.*). On January 26, 2017, the ALJ rendered a decision finding that Plaintiff was not disabled. (*Id.* at 14-26).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Plaintiff had not engaged in substantial gainful activity since September 29, 2011. (*Id.* at 17). At step two, the ALJ determined that she had the severe impairments of asthma, obesity, lumbar spondylolisthesis, hypertension, and obstructive sleep apnea. (*Id.*). At step three, the ALJ found that her impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (*Id.*). The ALJ concluded that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can only tolerate occasional exposure to dust, odors, fumes, and pulmonary irritants. (*Id.* at 19). At step four, the ALJ determined that she could return to her past relevant work as generally performed. (*Id.* at 25). Given his determination at step four, the ALJ did not render a determination at step five.

The Appeals Council denied review on May 2, 2018. (Tr. 1-7). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

II.     **FACTUAL BACKGROUND**

According to Plaintiff's pleadings, testimony at the administrative hearing, and administrative record, she was 55 years old on the alleged disability onset date of September 29,

2011, and 60 years old at the time of the administrative hearing. (ECF No. 14 at 3; Tr. 14). She completed high school, and her employment history includes work as an "Office Manager/Reception/Custome [sic]." (Tr. 178). Plaintiff asserts that her physical impairments render her disabled under the SSA.

### III.   LEGAL STANDARD

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197

F.3d 194, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC— "the most [a claimant] can still do despite [her] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.   ANALYSIS

Plaintiff argues that the ALJ's decision must be reversed because he made an impermissible "as generally performed" determination in step four of his analysis even though Plaintiff's past relevant work ("PRW") as an office manager/document billing clerk was a composite job. (ECF No. 14 at 2).

### A. Plaintiff's PRW as an Office Manager/Billing Clerk was a Composite Job.

Plaintiff argues that "[t]here is no question" that her PRW was a composite job. (ECF No. 14 at 6). Plaintiff claims that "[e]veryone, including [herself], the State Agency disability adjudicator, the VE, the ALJ, and the AC, characterized [her] past work as involving more than one job." (*Id.*). In response, the Commissioner argues that "the vocational expert and the ALJ both stated that [Plaintiff] performed two separate jobs (Tr. 26, 51), and not a composite job." (ECF No. 15 at 7). In her Reply, Plaintiff reiterates that her PRW as office manager/billing clerk constituted a composite job. (ECF No. 16 at 2-4).

A composite job has significant elements of two or more occupations and, consequently, has no counterpart in the *Dictionary of Occupational Titles* ("DOT"). *See* SSR 82-61, 1982 WL 31387 at *2 (eff. Aug. 20, 1980). Here, Plaintiff's past work included a position as an "Office Manager/Reception/Custome [sic]" for a hide-shipping company. (Tr. 37-38; Tr. 178). At the administrative hearing, the ALJ questioned Plaintiff about her PRW and referred to her job as an "office manager/receptionist." (Tr. 37). Plaintiff testified that she "had many duties" during her PRW, including "prepar[ation] [of] letters of credit to the banks." (*Id.*). Likewise, the state agency adjudicator listed Plaintiff's PRW as "OFFICE MANAGER/RECEPTION/CUSTO [sic]." (Tr. 80). The VE classified her PRW as involving "two different type jobs," "office manager" and "documentation billing clerk," both of which qualified as sedentary (Tr. 51).

Based upon the evidence in the record, the undersigned finds that Plaintiff's PRW was a composite job because it involved significant elements of the two different occupations of office manager and documentation billing clerk. Plaintiff did not merely perform one of these jobs or one more than the other. When she worked for the hide-shipping company, her duties required her to accomplish the responsibilities of both office manager and documentation billing clerk. For instance, she "prepared letters of credit to the banks;" "set up the trucking;" "prepare[d] all the

5

documents which is health certificates, bill of lading and et cetera;" prepared bank documentation; and managed customer accounts. This substantial evidence supports a finding that Plaintiff's PRW was a composite job.

> **B. The ALJ Erred at Step Four of the Sequential Evaluation Process when He Determined that Plaintiff Could Return to her PRW "as Generally Performed."**

Plaintiff argues that because her prior work was a composite job, Social Security Administration policy required the ALJ to not evaluate her PRW "as generally performed in the national economy." (ECF No. 16 at 4). Consequently, Plaintiff asserts that the ALJ violated Program Operations Manual System ("POMS") DI 25005.020(B) because he should not have evaluated her PRW "at the part of step 4 considering work 'as generally performed in the national economy.'" (*Id.* at 4-5 (citing POMS DI 25005.020(B), 2011 WL 4753471 (eff. Apr. 13, 2017))). In support of this argument, Plaintiff cites SSR 13-2P, which states "[a]lthough SSRs do not have the same force and effect as statutes or regulations, they are binding on all of our components." 20 C.F.R. 402.35(b)(1). SSR 13-2P also requires "adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, such as the . . . POMS . . . ." SSR 13-2P, 2013 WL 621536 at *15.

The Commissioner asserts that the ALJ properly relied upon the VE's testimony that Plaintiff could generally perform her PRW as an office manager and documentation billing clerk. (ECF No. 15 at 7). To support this conclusion, the Commissioner explains that Plaintiff "actually performed" "[t]he office manager and documentation billing clerk" jobs, and that these jobs "do not constitute a blend of tasks from several different occupations." (*Id.* at 8). The Commissioner argues that "the ALJ did not divide Plaintiff's past relevant job requirements and considered only the least demanding job in finding she could perform her [PRW]." (*Id.*). The Commissioner also asserts that even if Plaintiff's PRW is a composite job, the ALJ did not have to adhere to POMS

because it has no legal effect or force. (*Id.* at 10 citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam), *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994), and *Hickman v. Bowen*, 803 F.2d 1377, 1380-81 n.6 (5th Cir. 1986)). Therefore, the Commissioner argues that the ALJ did not commit error at step four. (*Id.* at 4-8).

"In disability determinations and decisions made at step four of the sequential evaluation process outlined in 20 CFR 404.1520, and at which the individual's ability to do past relevant work must be considered, Social Security Administration Rulings require the ALJ's analysis to consist of three distinct findings." *Piccolella v. Astrue*, No. 3:09-CV-696-M, 2010 WL 1051045, at *8-9 (N.D. Tex. Mar. 18, 2010) (citing SSR 82-62, 1982 WL 31386 at *3 (eff. Aug. 20, 1980)). "The ALJ must first evaluate a claimant's RFC in light of the claimant's physical and/or mental limitations." *Id*. "Next, the ALJ must determine the physical and mental demands of the claimant's past relevant work." *Id*. "Finally, the ALJ must determine whether the claimant can meet the job demands in the second finding despite the limitations in the first finding." *Id*.

With respect to an ALJ's evaluation of a composite job at step four, the SSA published specific guidance that addresses this issue, POMS DI 25005.020(B), 2011 WL 4753471. That provision states in pertinent part, "[a] composite job does not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" *Id.* "While POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force. 1 Soc. Sec. Law & Prac. § 1:27." *Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015). "POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions." *Id.* A court generally defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law. *Id. See also Craig v. Berryhill*, No. 17-1715-EWD (CONSENT), 2019 WL 1387696, at *6 (M.D. La. Mar. 27, 2019) (same).

7

Here, the ALJ determined at step four that Plaintiff performed PRW as an office manager and documentation billing clerk. (Tr. 25). The ALJ's decision stated the following:

> In response to a hypothetical assuming an individual possessing the same residual functional capacity, the vocational expert testified that such an individual could perform the claimant's past relevant work as an office manager and a documentation billing clerk as it is generally performed. The testimony of the vocational expert is consistent with the *DOT*, and the undersigned accepts it in accordance with SSR 00-4P. In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, the [ALJ] has determined the claimant is able to perform this past relevant work as generally performed based on the testimony of the vocational expert.

(Tr. 26).

The ALJ committed legal error because he did not properly analyze Plaintiff's PRW, a composite job, "as actually performed" instead of "as generally performed in the national economy." This case falls squarely within the provision of POMS DI 25005.020(B), 2011 WL 4753471, which requires ALJs not to evaluate composite jobs "as generally performed in the national economy." Although not a regulation or legally enforceable requirement, this POMS provision appears to be a reasonable requirement for how ALJs should approach a claimant's past relevant work that consists of more than one occupation or a combination of jobs. For that reason, the provision is not arbitrary, capricious, or contrary to law. In such cases, courts generally should defer to these provisions. *Bettery*, 2015 WL 4742296 at *8 n.9. *See also Craig*, 2019 WL 1387696 at *6. Consequently, the undersigned concludes that the ALJ committed legal error at step four of the sequential evaluation process because he improperly analyzed Plaintiff's composite job PRW "as generally performed."

    **C.**    **The ALJ Committed Reversible Error at Step Four Warranting Remand although he Consulted a VE**.

The Commissioner argues that "there is no error in consideration of composite jobs as long as the ALJ called a vocational expert." (ECF No. 15 at 9). In support of this argument, he cites

8

*Bryant v. Astrue*, No. 09–1499, 2010 WL 3541097, at *5 (WD. La. July 30, 2010); *DKB v. Commissioner*, No. 09–cv–0257, 2010 WL 502999, at *3-4 (W.D. La. Feb. 8, 2010); and *Adams v. Astrue*, No. 08–0135, 2009 WL 774845, at *7-8 (WD. La. Mar. 24, 2009). Plaintiff does not address this argument in her reply brief. (*See* ECF No. 16). The Court notes, however, that each of the cases cited by the Commissioner predate the effective date of the POMS that applies to this case.

Addressing the cases in turn, the court in *Bryant* held that the ALJ properly consulted a VE to determine the proper job description for claimant's PRW. *Bryant*, 2010 WL 3541097 at *5. In assessing the claimant's RFC, the ALJ properly relied on the VE's testimony that the claimant could perform his PRW as generally performed although he could not return to his PRW as actually performed. *Id.* But, the claimant's PRW in *Bryant* was not a composite job, and the court did not hold that so long as the ALJ consults a VE regarding consideration of a composite job, no error occurs. Thus, *Bryant* is not dispositive here.

The court in *DKB* held that "the record supports the finding that Plaintiff can perform the demands of retail manager as defined in the DOT, so all that would be required to resolve her claim at step five is testimony from the VE that such jobs exist in significant numbers in the relevant economy." *DKB*, 2010 WL 502999 at *3-4. In arriving at this conclusion, the court explained that "the record does not strongly suggest that [the claimant's] [PRW] was a composite job with no counterpart in the vast provisions of the DOT." *Id.* at *4. That is not the case here where Plaintiff's PRW was a composite job. Thus, *DKB* is not analogous to the present case.

In *Adams*, the court held that the ALJ did not err when he consulted a VE and relied on her testimony to support a conclusion that the claimant could return to her PRW as generally performed. *Adams*, 2009 WL 774845 at *7-8. The ALJ elicited testimony from the claimant that her PRW was as a "porter" and relied on the VE's testimony that the claimant could return to her

9

PRW as a mail clerk and/or general office clerk as those jobs were generally performed in the national economy. *Id.* But there was no determination that the claimant's past relevant work constituted a composite job.

Finally, the Commissioner cites *Williams v. Apfel*, 2000 WL 1598119, at *1 (5th Cir. Oct. 6, 2000) (per curiam) for the proposition that "if there is an issue as to whether a person can perform a composite job a[s] generally performed, the ALJ should call a vocational expert or rely on another source." (*See* ECF No. 15 at 9-12). In *Williams*, the court affirmed the Commissioner's denial of benefits even though the ALJ had not called a VE to testify at the administrative hearing. The court explained that because "the ALJ's determination was based on Williams's description of his past work as he actually performed it, the testimony of a vocational expert was unnecessary." *Id.* The court stated that even if "Williams's past work was a 'composite job' having significant elements of sedentary, light, and medium work, the available documentation was sufficient to determine how his job was usually performed, and it was therefore unnecessary to obtain expert vocational testimony." *Id.* (citing SSR 82-61, 1982 WL 31387, at *1-2 (eff. Aug. 20, 1980)).

Certainly, "an ALJ may consult a VE to determine the proper characterization of a claimant's past work." *Holland v. Colvin*, No. 3:14-CV-2964-K-BH, 2015 WL 5437727, at *13 (N.D. Tex. Aug. 8, 2014) (citing SSR 82-61, 1982 WL 31387 at *2). Here, the ALJ consulted a VE who testified that Plaintiff's PRW consisted of two different job types (office manager and documentation billing clerk). (Tr. 51-54). When asked if Plaintiff could perform these two jobs as generally performed, actually performed, or both, the VE testified that Plaintiff could only generally perform these jobs. (Tr. 52). The ALJ relied upon this testimony when evaluating Plaintiff's medical impairments at step four. The ALJ's reliance on this testimony during his analysis was in error because Plaintiff's PRW was a composite job and under the POMS at issue should have been evaluated as actually performed.

10

Not every error is a reason for reversal of an ALJ's decision. A procedural error is not grounds for remand unless the Plaintiff's substantial rights are affected by the error. *Snodgrass v. Colvin*, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)). Here, the ALJ might have reached a different conclusion had he employed the proper analysis at step four and if he had proceeded to step five. On the facts of this case, the ALJ's use of the improper standard of evaluation at step four affected the Plaintiff's substantive rights and warrants reversal and remand.

**D.     Plaintiff did not Waive the ALJ's Error by not Cross-Examining the VE on this Topic**.

Citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000), the Commissioner argues that Plaintiff waived her right to raise "the composite job issue or anything regarding Plaintiff's [PRW]" because her "counsel at the hearing did not question the vocational expert" about this subject. (ECF No. 15 at 11). Plaintiff responds that her counsel did not need to cross-examine the VE on this point because the ALJ had already elicited this testimony during his direct examination of Plaintiff and the VE. (ECF No. 16 at 8).

The ALJ elicited the following testimony from Plaintiff at the hearing:

Q And it appears from your earnings records and from your reports that you submitted, you stopped working in September 2011, is that accurate?

A Correct.

Q And it looks like for quite some time from 1993 through 2011, you worked as an office manager/receptionist, would that be accurate?

A I had many duties, mainly prepared letters of credit to the banks.

> Q Okay. So, let me just . . . look at something. All right. So, you were working—it looks like you were working for the same company during all this time?
>
> A Yes, sir.
>
> Q So, you were with the same company, you had different responsibilities, part of those responsibilities [was] as an office manager?
>
> A Yes, sir.
>
> Q Okay. And you also did receptionist type work?
>
> A Yes, sir.
>
> Q And then the last thing that you mentioned, letters of credit?
>
> A Yes, sir.
>
> Q Okay. Tell me about that, what did you do in that capacity?
>
> A Our company shipped hides, I would have to set up the trucking and then companies overseas would open these letters of credit to show that they had money to pay for these cattle hides. And I would have to prepare all the documents . . . [including] health certificates, bill of lading and [etc.], a packet that I would have to present to the bank and to make sure everything was in line and I mean everything had to be specific, no misspelled words or anything to collect our money.
>
> Q So, this was managing accounts in a way, I guess, dealing with the individual—the customer and making sure that the logistics were taken care of, stuff like that?
>
> A Yes, sir.

(Tr. 37-38). Thereafter, the ALJ elicited the following testimony from the VE:

> Q . . . Ms. Aliff, could you please classify the claimant's past work?
>
> A Yes, Your Honor, it appears there were two different type jobs. We have an office manager, this is the DOT Code of 169.167-034, that is sedentary, with and [sic] SVP of 7; finally [,] I have a documentation billing clerk, the DOT Code of 214.362-014, sedentary, with an SVP of 4.
>
> Q . . . Could [Plaintiff] perform both of those jobs?
>
> A Yes, sir, both of them.
>
> Q Okay. And that is as actually and generally performed?

>A Generally performed, obviously, there was some exposure probably to odors and fumes at her job that she previously held, but in other environments those did not exist.
>
>Q . . . And for the next hypothetical, again, assuming a hypothetical individual [Plaintiff's] age and [having her] education with the past jobs that you described and if the individual were limited to sedentary work with, again, having only occasional exposure to dust, odors, fumes and pulmonary irritants, could the hypothetical individual perform the past job that you described, the past jobs?
>
>A Yes, Your Honor, both.
>
>Q And the same as generally performed?
>
>A Yes, Your Honor.

(Tr. 51-52).

It is clear from the record that Plaintiff did not need to cross-examine the VE about her composite job and whether it could be "generally performed" or "actually performed." The ALJ had already elicited testimony from both Plaintiff and the VE that Plaintiff's PRW comprised two different jobs and the respective duties in one position that she held at the hide-shipping company. (Tr. 37-38; Tr. 51-52). Moreover, the ALJ specifically questioned the VE as to whether Plaintiff could return to her PRW as actually performed or generally performed. (*Id.*). The VE answered that Plaintiff could return to her PRW as generally performed (*id.* at 51-52), which is the exact testimony that the ALJ relied upon when evaluating Plaintiff's PRW at step four. Thus, the Commissioner's argument that Plaintiff waived her right to raise the "composite job issue," challenging the legal standards that the ALJ applied at step four, is not persuasive because she did not need to cross-examine the VE on specific topics that already were raised by the ALJ in direct examination. Consequently, the Plaintiff did not waive her right to object to the ALJ's use of the incorrect legal standard by not cross-examining the VE on this issue.

## V. CONCLUSION

Based on the evidence of record, Plaintiff's past relevant work was a composite job. At step four of his analysis, the ALJ erred by analyzing her work as "generally performed in the national economy" and not "as actually performed." This determination was not permitted under POMS DI 25005.020(B), 2011 WL 4753471, which provision is not arbitrary, capricious, or contrary to law on the facts of this case. The ALJ should have properly analyzed Plaintiff's PRW as a composite job under POMS DI 25005.020(B), and had he done so, his determination of Plaintiff's disability may have been different. This legal error affected the Plaintiff's substantial rights, and Plaintiff did not waive her right to assert this error and seek reversal. The ALJ's decision should be reversed and the case remanded for further proceedings.

## RECOMMENDATION

After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed **September 6, 2019.**

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE